**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| WILLIAM CALLON, and | ) | |
| SHANNON CALLON, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:09-cv-01473-TWP-MJD |
| | ) | |
| BETH ANN COX, | ) | |
| THE TOWN OF BARGERSVILLE, | ) | |
| INDIANA and NANCY KEHL, | ) | |
| | ) | |
| Defendants. | ) | |

**ENTRY ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

This case comes before the Court on Defendants' Motion for Summary Judgment. Plaintiffs William Callon ("William") and Shannon Callon ("Shannon") (collectively, "the Callons"), filed a suit in this Court against Defendants Beth Ann Cox ("Cox"), Nancy Kehl ("Kehl"), and the Town of Bargersville, Indiana ("the Town") (collectively, "Defendants") alleging violations of their constitutional rights under 42 U.S.C. § 1983 and a state law claim for false imprisonment.  In August 2008, the Town brought a small claims action against the Callons for failure to pay their utility bill.  According to the Town, the Callons owed approximately $409.60 to the Town plus $99.00 in court costs.  The Callons paid the utility bill and the court costs to the county clerk shortly after appearing in a proceedings supplemental hearing.  However, due to miscommunications between the Town and the county clerk's office, coupled with oversight failures attributable to Cox and Kehl, the Town never received the court costs which had been paid by the Callons.  This led to the issuance of body attachment warrants for the Callons by a magistrate judge.  The Callons were subsequently arrested and released on the same

day after paying a bond. Shortly after their release, the Town acknowledged the error and issued a satisfaction of judgment and requested a release of the Callons' bond money.

Not surprisingly, the Callons filed this lawsuit against Cox, the Town's suit representative, Kehl, the administrative assistant to the utility superintendent, and the Town of Bargersville. Specifically, the Callons in their amended complaint allege the Defendants violated their Fourth Amendment rights when they knowingly or with reckless disregard for the truth, misrepresented information to a magistrate judge in seeking body attachment warrants. In addition, the Callons allege that their due process rights under the Fourteenth Amendment were violated based on the nature of their arrest and the Town's failure to release the bond money and file a satisfaction of judgment in a timely manner. The Callons further argue that the Town is liable pursuant to § 1983 because its practice of collecting unpaid utility bills through body attachment warrants caused them to suffer a constitutional deprivation. Lastly, the Callons contend that Defendants are liable under the state law tort for false imprisonment. In countering these allegations, Defendants contend that their actions did not constitute a violation of the Fourth Amendment or of the Fourteenth Amendment. Moreover, Defendants argue the Callons' state law claim is barred by immunity. For the reasons set forth below, Defendants' Motion for Summary Judgment (Dkt. 66) is **GRANTED** in part and **DENIED** in part**.**

## I. <u>BACKGROUND</u>

**A.** **Town of Bargersville's Municipal Utility Service**

The Town owns and operates a municipal utility which provides electric, water, sewer, and storm water services to approximately 14,000 residential and business customers in Bargersville, Indiana. Collection responsibilities for delinquent accounts relating to municipal utilities are referred to the Town's suit representative, a position appointed by the town council to represent the Town in small claims court. Delinquent utility accounts are typically referred to

the suit representative by the billing department once the account is closed.  In 2005, Cox was appointed by the town council to the position of suit representative.  Cox is responsible for collection of accounts owed to the Town, including utility accounts where the balance is up to $1,500.00.[1]  Prior to Cox's appointment, she worked as the administrative assistant to the utility superintendent and assisted the former suit representative in representing the Town in collection proceedings.  Beyond her role as suit representative, Cox has several years of experience working in the consumer debt collection industry with various private entities.

In 2006, the Town passed Ordinance No. 2006-05, commonly referred to as the "sewer rate ordinance," which provides as follows:

> The rates and charges may be billed to the tenant or tenants occupying the property served, if requested in writing by the owner, but such billing shall in no wise [sic] relieve the owner from liability in the event payment is not made as herein required.

(*See* Dkt 77-7).  Pursuant to this ordinance, the Town may collect utility bills from a given tenant with the permission of the owner/landlord; however, the owner/landlord remains liable for any sewer bills that remain unpaid.  This ordinance also appears to be in accordance with Indiana state law, which permits sewage fees to be "payable by the owner" of each property connected to the sewer system.  *See* Ind. Code § 36-9-23-25(c).  Accordingly, since 2006, Cox has implemented two types of methods for collecting fees on delinquent utility accounts.  Under the first method, Cox attempts to contact utility customers in an attempt to arrange payment schedules for their delinquent accounts instead of filing small claims suits.  However, Cox will file a suit if satisfactory arrangements are not made or the customer fails to make the agreed upon payments.  Under the second method, Cox can choose to collect the sewer and water costs attributable to the tenants from the owner/landlord of the property pursuant to the Town's

---

[1] Cox is also responsible for collecting other accounts for the Town beyond utility accounts, such as bills resulting in damage to property.  (*See* Dkt. 73-1 at 5.)

ordinance.  However, under certain circumstances, Cox may inadvertently collect utility fees from the owner/landlord after customers have already made payment to the Town to satisfy any court judgments against them.  In these unique cases, Cox typically reimburses the money initially collected from the owner/landlord by the Town.

**B.      Collection Proceedings Against the Callons**

From August 2006 to approximately June 2008, the Callons rented a residential home in Bargersville, Indiana, located at 166 Harmony Hill Road, a residential dwelling that is part of Harmony Hills Properties.  During this period, William was self-employed and worked in the real estate industry and performed floor installation, while his wife, Shannon, worked for local businesses in Bargersville.  However, despite the Callons' attempts to timely pay their monthly bills, they eventually fell behind in their payments, including their utility bills.  In June 2008, the Callons decided to move out of the Harmony Hills residence when they agreed to separate as a married couple.  Utility records indicate that the Callons' account closed on June 19, 2008.

The Town brought a collection action against the Callons for a delinquent utility account with an overdue balance of $406.90.  In August 2008, the Town obtained a judgment of $406.90 plus $99.00 in court costs for a total of $505.90.  On September 17, 2008, a hearing was held at the Johnson Circuit and Superior Court where the Callons admitted to Magistrate Judge Richard Tandy that they owed the total judgment; however, they did not pay it at this initial hearing.  The court scheduled proceedings supplemental on October 31, 2008 and ordered the Callons to appear at this second hearing.  During the second hearing in front of Magistrate Judge Tandy in October, the Callons indicated they would pay the full judgment that afternoon and inquired about the proper procedure for paying.  Cox, the suit representative, informed them that they could either pay her or the county clerk, and if they paid her she would file a satisfaction of

judgment the following Monday.  Before the end of the hearing, Magistrate Judge Tandy emphasized to the Callons that regardless of how they paid the judgment, they needed to inform Cox so that she could file a satisfaction of judgment.  At the end of the hearing, Magistrate Judge Tandy scheduled another proceeding supplemental for February 20, 2009 and informed the Callons they did not need to appear in court in February — if they paid the full judgment.

Shannon paid the full judgment in the amount of $505.90, which included the court costs of $99.00, to the county clerk's office on the afternoon of October 31, 2008.  Shannon received a handwritten receipt from the county clerk's office acknowledging her payment.  However, neither Shannon nor William informed Cox that they had paid the total civil judgment to the county clerk's office.  On November 5, 2008, unaware of the Callons' payment, Cox was informed that outstanding sewer liens were placed on rental properties managed by Harmony Hill Properties.  Pursuant to the Town's practice of collecting bills, Cox decided to collect sewer payments from Michael Ennis, the landlord of Harmony Hills Properties.  An amount of $212.34 submitted by Ennis was posted to the Callons' delinquent utility account on November 11, 2008. Between November 11 and November 19, 2008, Cox received a check for $406.90 from the county clerk, representing the unpaid utilities portion of the Callons' utility bill.  Notably, the check did not contain additional fees to cover the court costs.  At this time, Cox concluded that the Callons had not paid the court costs because normally the county clerk would send a check to Cox covering the entire judgment amount including court costs.  Cox did not contact the county clerk's office to verify whether or not the court costs were still owed by the Callons.  Upon receipt of this payment by the county clerk, Cox initially refunded $212.34 to the landlord.  The refund was in accordance with Cox's collection practices; however, she did not inform the

5

Callons of this specific action at that time.  The remainder of the county clerk's payment was applied to the Callons' outstanding balance on their account on November 19, 2008.

Between December 3, 2008 and March 3, 2009, Cox went on medical leave and left her responsibilities as suit representative to Kehl.  According to Cox, it was common for the individuals in Kehl's position to assist the suit representative in court proceedings.  Before going on leave, Cox informed Kehl, based on her information, that the Callons still owed court costs.  However, she did not contact the clerk to verify whether court costs were still owed.  Before the February 20, 2009 hearing, Kehl contacted the utility billing department to see if the court costs had been paid; however, Kehl did not check with the county clerk's office to verify the court costs had not been paid.  On February 20, 2009, the Callons did not appear in court since they had paid the judgment in full on October 31, 2008.  Kehl informed Magistrate Judge Tandy that the $99.00 in court costs were still due and that she had not excused the Callons from having to appear in court.  After that representation, Magistrate Judge Tandy issued body attachments for the Callons.

## C.    Enforcement of the Body Attachments

On February 27, 2009, Shannon received notices of body attachments for her and William.  Shannon testified that once she received the notices she attempted to the call the Town's utility office; however, she did not get an answer.  It is unclear from the record what time Shannon placed the call.[2]  Because Shannon could not reach anyone at the county clerk's office, she called the utility's office and spoke with Kehl.  Kehl said there was nothing she could do about the situation until Cox returned to work (on March 3, 2009).  Shortly after speaking with Kehl, Shannon drove to the utility office to speak with Kehl in person.  When Shannon

---

[2] The record indicated that the county clerk's office as well as the Johnson Circuit and Superior Court close at 4:30 p.m. on the weekdays. (*See* Dkt. 73-26 at 1.)

arrived at the utility office, she was understandably upset.  During the conversation, Shannon showed Kehl her handwritten receipt from the county clerk's office.  After seeing the receipt, Kehl called Cox at home to inform her of its existence.  Because Cox was on medical leave, she informed Shannon she could not assist her until she returned to the office the following week. While she did not mention it in her deposition, in a subsequent affidavit Kehl indicates that she did not contact the clerk's office or the magistrate judge's office because she erroneously believed those offices closed at 4:00 p.m.

The following day, February 28, 2009, local authorities came to the Callons' residence and arrested them pursuant to the body attachments.  The Callons were taken to the Johnson County jail and were detained for a period of time.[3]  The Callons subsequently paid $100.00 each in bond and a $5.00 processing fee with the assistance of William's parents.  Upon an investigation launched by Cox when she returned from medical leave, she discovered that the county clerk had changed the procedure regarding court costs.  Under the new procedure, the county clerk would remit the judgment amounts received, while withholding court costs.  Cox testified in a deposition that based on her knowledge, the clerk had never previously withheld court costs and would normally send entire judgments, including courts costs, to the Town's utility office.  Subsequently, Cox issued a satisfaction of judgment on the Callons' civil judgment and requested a release of their bond money in March 2009.  Additional facts are added below as needed.

## II. <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

---

[3] The parties dispute the duration of the Callons' actual detainment by the police.  The Plaintiffs claimed they were detained for approximately two hours, while the Defendants claim they were detained for no more than an hour. (*See* Dkt. 67 at 6.)

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 489-90 (7th Cir. 2007).   In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted).   However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted).   "In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of a claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citation and internal quotations omitted).   "[N]either the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Group, Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and internal quotations omitted).

## III. DISCUSSION

The Callons allege the Defendants violated their Fourth Amendment rights and their due process rights under the Fourteenth Amendment pursuant to 42 U.S.C. § 1983, when they were arrested by local authorities based on incorrect information.   Specifically, the Callons argue that Cox and Kehl knowingly and recklessly misrepresented to the magistrate judge that the Callons failed to pay their court costs warranting the issuance of body attachments.   Moreover, the Callons assert that the Defendants' actions constitute a substantive due process violation under the Fourteenth Amendment.   In addition, the Callons contend that the Town is liable under § 1983 because its collection policy of seeking body attachments as a means to collect unpaid

8

utility bills from customers resulted in a constitutional deprivation on the part of the Callons. The Callons further allege additional state law claims against the Defendants. The Court will address each of these issues in turn.

**A.     Callons' Constitutional Claims Against Cox and Kehl**

The Callons claim that there is sufficient evidence establishing the existence of genuine issues of material fact, which precludes the granting of summary judgment in favor of Defendants. Specifically, the Callons allege both Cox and Kehl acted with intentional or reckless disregard for the truth in obtaining body attachments against them in violation of their Fourth Amendment rights. Defendants counter by arguing that Cox and Kehl did not act intentionally, knowingly, or with reckless disregard for the truth when they did not have any reason to believe that the Callons initially did not pay their court costs as ordered by the court. The Defendants also argue that Cox and Kehl are entitled to qualified immunity.

The doctrine of qualified immunity protects government officials performing discretionary functions. *Anderson v. Creighton*, 483 U.S. 635, 638-39 (1987). Specifically, qualified immunity shields officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Importantly, when qualified immunity applies, a defendant is not merely entitled to a defense from liability; he is entitled not to stand trial. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985); *Leaf v. Shelnutt*, 400 F.3d 1070, 1080 (7th Cir. 2005). In determining whether qualified immunity will apply to shield a government official from suit, a court undertakes a two-step inquiry. First, a court must address a threshold question: "whether the plaintiff's allegations make out a deprivation of a constitutional right?" *McAllister v. Price*, 615 F.3d 877, 881 (7th Cir. 2010). If it is determined

that no constitutional right would have been violated based on the facts alleged, there is no necessity for further inquiries concerning qualified immunity. *Kraushaar v. Flanigan*, 45 F.3d 1040, 1049 n.4 (7th Cir. 1995). If, however, the alleged allegations make out a constitutional violation, the court must proceed to step two of the inquiry and determine "whether the right was clearly established." *McAllister*, 615 F.3d at 881. As the Supreme Court has set forth, a right is clearly established when "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson*, 483 U.S. at 640; *see also Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (concluding that district courts have discretion in addressing the two step inquiry in any order in light of the circumstances of the case at hand). Thus, in the case at hand, the first issue for the Court is to determine whether based on the alleged allegations, the officials' actions violated the Callons' constitutional rights under the Fourth Amendment or the Fourteenth Amendment.

### 1.      Fourth Amendment Issue

The Callons assert federal constitutional claims against the Defendants pursuant to 42 U.S.C. § 1983. Title 42 U.S.C. § 1983 creates a federal cause of action for "the deprivation, under color of [state] law, of a citizen's rights, privileges, or immunities secured by the Constitution and laws of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994). Because § 1983 is not itself a source of substantive rights, but a means for vindicating federal rights elsewhere conferred, "the first step in any [§ 1983] claim is to identify the specific constitutional right infringed." *Albright v. Oliver*, 510 U.S. 266, 271 (1994); *see also Ledford v. Sullivan*, 105 F.3d 354, 356 (7th Cir. 1997). The Callons first argue that Kehl's false assertions to the magistrate judge that the Callons' court costs were unpaid along with Cox and Kehl's

failure to take action to recall the body attachments after they were issued violated their Fourth Amendment rights.

The standard for challenging the validity of an affidavit of an arrest warrant (or in this case the body attachments) was established by the United States Supreme Court in *Franks v. Delaware*, 438 U.S. 154 (1978). In *Franks*, the Supreme Court held that a Fourth Amendment violation occurs when an affiant in his warrant affidavit makes a false statement, or omits a material fact, either knowingly, intentionally or with reckless disregard for the truth, where such information is necessary to a magistrate's probable cause determination. *Id.* at 155-56; *see United States v. Norris*, 640 F.3d 295, 300-01 (7th Cir. 2011) (citing *Franks*, 438 U.S. at 155-56); *United States v. Taylor*, 471 F.3d 832, 838-39 (7th Cir. 2006); *see also Parkey v. Sample*, 623 F.3d 1163, 1165 (7th Cir. 2010) (stating that to establish a *Franks* violation, an individual must show that the affiant: 1) knowingly or intentionally or with reckless disregard for the truth made misstatements to the magistrate judge and 2) demonstrate that the statements were necessary to the magistrate judge's probable cause determination). While allegations of deliberate falsehood or of reckless disregard for the truth can trigger a Fourth Amendment violation, mere "allegations of negligence or innocent mistake are insufficient." *Herring v. U.S.*, 555 U.S. 135, 145 (2009) (citing *Franks*, 438 U.S. at 171). However, "[t]here is…a presumption of validity with the affidavit supporting [an arrest warrant] or a search warrant." *Franks*, 438 U.S. at 171; *see also Haywood v. City of Chi.*, 378 F.3d 714, 719 (7th Cir. 2004). Thus, for the Callons to rebut this presumption and survive summary judgment, they must set forth evidence that Cox or Kehl "knowingly or intentionally or with reckless disregard for the truth" made misstatements to the magistrate judge and show the statements were necessary to the magistrate

judge's probable cause determination in issuing the body attachments.[4]  *Beauchamp v. City of Noblesville*, 320 F.3d 733, 742 (7th Cir. 2003); *see also Parkey*, 623 F.3d at 1165.

### a.    Claim Against Kehl

Under the framework set forth in *Franks*, the Court must first determine whether a reasonable jury could conclude that Cox or Kehl made false statements to the magistrate judge intentionally or with reckless disregard for the truth.  *See Parkey*, 623 F.3d at 1165.  The Seventh Circuit has noted that "a 'reckless disregard for the truth' is demonstrated by showing that the officers entertained serious doubts as to the truth of their statements, had obvious reasons to doubt the accuracy of the information reported, or failed to inform the judicial officer of facts they knew would negate probable cause."  *Beauchamp*, 320 F.3d at 743 (citing *United States v. Whitley*, 249 F.3d 614, 621 (7th Cir. 2001)); *see also United States v. Souffront*, 338 F.3d 809, 822 (7th Cir. 2003) (stating that in order to prove deliberate falsehood or reckless disregard for the truth, there must be "direct evidence of the affiant's state of mind or inferential evidence that the affiant had obvious reasons for omitting [material] facts" from the affidavit).

The Callons claim Kehl made false assertions during the February 20, 2009 hearing in front of the magistrate judge, which were material to the court's finding of probable cause.  While Kehl never actually submitted a warrant application with the magistrate judge, her verbal assertions to the judge had the same effect of conferring the basis for probable cause because of the similarity of body attachments to arrest warrants.  *See Montgomery v. Morgan Cnty.*, 2008 WL 596068, at *8 (S.D. Ind. Feb. 29, 2008) (treating a civil order of apprehension with the same

---

[4] In the Southern District of Indiana, body attachment warrants issued by Indiana state courts for failure to appear at court proceedings have been treated similarly to arrest warrants.  *See Montgomery v. Morgan Cnty.*, 2008 WL 596068, at *7-8 (S.D. Ind. Feb. 29, 2008) (treating a civil "order for apprehension and return" of the plaintiff issued by an Indiana state court as an arrest warrant); *Hankins v. City of Rushville*, 2005 WL 2100068, at *2 (S.D. Ind. Aug. 30, 2005) (treating a body attachment order issued by an Indiana state court for plaintiff's failure to appear at a child support hearing as an arrest warrant).  Therefore, the Court will treat the body attachment orders issued by the Johnson Circuit and Superior Court with the same authority as arrest warrants, even though they were the result of a civil, rather than criminal, proceeding.

authority and effect as an arrest warrant when "they both have the intended legal effect of authorizing law enforcement officers to locate and *bodily attach* or apprehend an individual") (emphasis added); *United States v. Roth*, 201 F.3d 888, 893 (7th Cir. 2000) ("Probable cause requires only a probability of a substantial chance of criminal activity not an actual showing of such activity.") (internal citation omitted).   However, before reaching the probable cause analysis pursuant to *Franks*, the Callons must show that Kehl made her assertions either intentionally or with reckless disregard for the truth.

Reviewing the record in the light most favorable to the Callons, they have not set forth sufficient evidence to show that the Defendants acted intentionally or knowingly.  Thus, the Callons' Fourth Amendment claim rests on their assertion that Kehl's false statements to the magistrate judge were made with a "reckless disregard for the truth." Specifically, the Callons claim that Kehl's statement that "the Callons still owed $99.00 in court cost" at the time of the hearing, was made with reckless disregard for the truth.  To reiterate, the appropriate inquiry is whether Kehl entertained serious doubts as to the truth of her statement at the time she made it. *Beauchamp*, 320 F.3d at 743.  While the Defendants concede that the information that Kehl presented to the magistrate judge at the hearing was later determined to be incorrect, the Defendants argue Kehl had no reason to believe these assertions were untrue on February 20, 2009.  (*See* Dkt.67 at 13; Kehl Aff., Dkt. 68-27 at ¶8).  Accordingly, the Defendants argue that Kehl's actions did not constitute a *Franks* violation.  The Court agrees.

In this case, Kehl had no reason to know or doubt Cox's initial assertion to her that the Callons' court costs remained unpaid when she participated in the February 20, 2009 hearing. Kehl spoke with Cox before she went on medical leave and Cox informed her that the court costs were still owed.  She also contacted the utility billing department which informed her that the

court costs were still due.  Additionally, there is no evidence in the record to indicate that she entertained serious doubts about the truthfulness of the statements she made on February 20, 2009.  Because she believed her assertions to the magistrate judge to be truthful, Kehl's statements were not made intentionally or with reckless disregard for the truth.  *See Zambrella v. United States*, 327 F.3d 634, 639 (7th Cir. 2003) (finding that an officer did not exhibit a reckless disregard for the truth when his search warrant affidavit contained two factual errors, he believed to be true at the time, which were later discovered to be incorrect).  At most, Kehl's failure to contact the county clerk's office regarding the status of the Callons' unpaid court cost fee was negligence, which is not enough to support a *Franks* violation.[5]  *See United States v. A Residence Located at 218 Third Street*, 805 F.2d 256, 258 (7th Cir. 1986) (recognizing that mere negligence by the affiant does not constitute reckless disregard for the truth).  The Callons have thus fallen short of establishing that Kehl exhibited a reckless disregard for the truth to support a *Franks* violation.[6]

### b.    Claim Against Cox

The Callons also claim that Cox's actions violated their Fourth Amendment rights, when she declined to take corrective steps to have the body attachments recalled once she became aware of the existence of a receipt of payment for the court costs.  A review of the relevant facts is instructive.  On February 27, 2009, Shannon went to the Town's utility office and spoke with Kehl about the body attachment notices she and William received earlier in the day.  At some point during the heated conversation, Shannon showed Kehl a handwritten receipt from the

---

[5] In their briefing, Defendants concede that if Kehl would have checked with the county clerk's office she would have learned of the paid court costs; however, the Defendants argue that at most, her failure to call the county clerk's office was due to negligence.  (*See* Dkt. 67 at 13.)

[6] Because the Callons failed to establish the first prong of the *Franks* analysis, as it relates to Kehl's assertions to the magistrate judge, the Court does not find it necessary to analyze the materiality prong under *Franks*.

clerk's office evidencing payment of the utility bill, including the court costs.  After seeing the receipt, Kehl called Cox to inform her of its existence.  It is unclear from the record whether or not Cox became aware of the receipt before the clerk's office and the court closed for the day.[7] Based on these circumstances, the Callons argue that Cox acted recklessly by failing to take actions to recall the body attachments at that time, a practice she normally implemented once she received payment on a delinquent account.  (*See* Cox Aff., Dkt. 68-1 at 12.)  In support of their argument, Defendants contend that *Franks* imposes a continuing obligation on an individual to apprise the warrant issuing judge of all relevant information learned after the issuance of a warrant.

However, the Callons present no support for this legal standard beyond referring the Court to the holding in *Franks*.  In the Court's view, the Callons have not thoroughly developed this argument.  In addition, the Callons have misinterpreted the holding of the Supreme Court in *Franks* as it applies to this case.  The holding in *Franks* is limited to an individual's challenge of the validity of the underlying affidavit of an arrest warrant as it relates to false statements or omissions that create a falsehood in *applying for a warrant*, not after its issuance.  *See Beauchamp*, 320 F.3d at 743 ("In determining whether information submitted to a judicial officer in support of a warrant application was sufficient to establish probable cause, we look only at what the officer knew *at the time he sought the warrant*, not at how things turned out in hindsight.") (emphasis added).  Traditionally, in Fourth Amendment cases involving a challenge of the sufficiency of an affidavit based on an officer's assertions, the standard applied is the same as discussed above.  *See id.; see also Wilson v. Russo*, 212 F.3d 781, 788 (3d Cir. 2000) ("An

---

[7] The Callons have submitted affidavits from both the former county clerk and the magistrate judge attesting to the fact that both locations were open until 4:30 p.m. on February 27, 2009.  (*See* Pltf. Resp., Dkt. 72 at 10-11.)  The Defendants counter by claiming that even if Shannon arrived at the utility office before 4:30 p.m., by the time Cox received the information it was likely past 4:30 p.m.  (*See* Def. Brief, Dkt. 67 at 5.)

assertion is made with reckless disregard when "viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported.").

Applying these principles to the facts of this case, Cox had no reason to doubt the truth of the statements she made to Kehl two months prior to the February 20, 2009 hearing.  The Callons have not provided any evidence to suggest that Cox had previous knowledge of the county's changed practice to withhold court costs rather than remitting them to the Town. Additionally, the Callons did not set forth any evidence that Cox deviated from her common collection practices, when she did not call the county clerk to inquire about the status of the Callons' court costs.  Moreover, the Callons did not present any evidence that Cox would have been able to contact the court to recall the body attachments in light of her physical condition, which required medical leave.  Therefore, no reasonable jury could conclude that Cox's representations to Kehl or her actions subsequent to the issuance of the body attachments constituted a reckless disregard for the truth.[8]  Accordingly, Defendants are entitled to summary judgment on the Plaintiffs' Fourth Amendment claims.

### 2.   Fourteenth Amendment Issues

The Callons next allege that the Defendants' actions resulting in their arrest constituted constitutional violations of their rights under the Fourteenth Amendment.  Specifically, the Callons assert a number of substantive due process and procedural due process claims against Defendants.  The Court will address the Callons' Fourteenth Amendment claims in turn.

---

[8] As discussed previously, because the Callons failed to establish the first prong of the *Franks* analysis, as it relates to Cox's assertions and actions, the Court does not find it necessary to analyze the materiality prong under *Franks*.

### a.    Procedural Due Process Claims

The Callons assert that the Town's policy of collecting utility payments from local landlords and issuing a refund to them after tenants pay their delinquent accounts is a procedural due process violation.  Specifically, the Callons argue that the Fourteenth Amendment requires the Town to provide them with notice and an opportunity to be heard in a predeprivation hearing. The Court disagrees.

To establish a procedural due process violation of a property interest, the plaintiff must show that there is "1) a cognizable property interest; 2) a deprivation of that property interest; and 3) a denial of due process." *Hudson v. City of Chicago*, 374 F.3d 554, 559 (7th Cir. 2004) (citation omitted).  In order to claim a property interest protected by the Fourteenth Amendment, "a person…must have more than a unilateral expectation of [the claimed interest].  He must, instead have a legitimate claim of entitlement to it." *Board of Regents of State Colleges. v. Roth*, 408 U.S. 564, 577 (1972); *see also Fincher v. South Bend Heritage Foundation*, 606 F.3d 331, 334 (7th Cir. 2010) ("[A] legitimate claim of entitlement to warrant a due process hearing occurs only when the statutes of regulations in question establish a framework of factual conditions delimiting entitlements which are capable of being explored at a due process hearing.") (internal quotation and citation omitted).

Here, the Callons have not adequately demonstrated that they are entitled to the money refunded to their landlord after the Town received the Callons' initial payment from the county clerk's office.  The utility bill at issue in this case was in the Callons' name, and the Callons admitted at their initial hearing in front of Magistrate Judge Tandy that they owed the utility bill. Due to the change in the Town's policy, Cox was not notified of the Callons' full payment of their utility bill and court costs; therefore, pursuant with the Town's ordinance, she collected

17

payment from the landlord. *See* Ind. Code § 36-9-23-25(c). The Callons have not shown that the relevant local ordinances and state laws entitle them to a refund of money paid by the landlord; therefore, no predeprivation hearing is required to provide adequate due process. *See Kahn*, 630 F.3d at 531 (concluding that the Due Process Clause does not require the plaintiff to be given a predeprivation hearing in a situation where there is no present entitlement).

Moreover, the Callons cannot prevail on their argument that the Town's failure to timely release their satisfaction of judgment along with their bond money was a due process violation, when adequate state law remedies exist. *See Michalowicz v. Village of Bedford Park*, 528 F.3d 530, 534 (7th Cir. 2008). "To show a failure of due process, a plaintiff might show that state procedures as written do not supply basic due process or that state officials acted in [a] 'random and unauthorized' fashion in depriving the plaintiff of his protected interest." *Strasburger v. Board of Education, Hardin County Community Unit Sch. Dist. No. 1*, 143 F.3d 351, 358 (7th Cir. 1998) (quoting *Parratt v. Taylor*, 451 U.S. 527, 540 (1981)). However, a property deprivation as a result of a random and unauthorized event does not constitute a procedural due process violation when an adequate state law remedy exists that provides for meaningful relief. *Belcher*, 497 F.3d at 750. Because the Callons do not challenge the constitutionality of Indiana's utility bill collection procedures, the Callons' argument amounts to a challenge of the "random and unauthorized" actions of Town officials. Thus, the Town officials' actions regarding the release of a satisfaction of judgment and the bond money does not amount to a due process violation, even if the officials' actions were random and unauthorized, when an adequate state law remedy exists.

Looking at the record in the light most favorable to the Callons, the actions of the Town officials could be characterized as random and unauthorized. Under Indiana law, it requires the

judgment holder to release judgment upon payment.   Ind. Code § 32-35-2-23.   In addition, the Town was required to request from the court an order to release the Callons' bond money upon receiving full payment.  The Callons did not receive their satisfaction of judgment until March 2, 2009, and the court did not release their bond money until March 26, 2009.  Because the Callons did not receive their judgment or their bond money until March of 2009, the Town officials' actions in depriving these interests from the Callons were a result of random and unauthorized conduct.  Thus, the Court must now analyze whether state law provides for an adequate remedy.

With regards to adequate state law remedies, the Supreme Court and the Seventh Circuit have continually recognized that a state is not required to provide a hearing prior to the deprivation of property when a post deprivation remedy exist.  *See e.g.*, *Hudson v. Palmer*, 468 U.S. 517, 533 (7th Cir. 1984); *Parratt*, 451 U.S. at 540; *Doherty v. City of Chi.*, 75 F.3d 318, 323 (7th Cir. 1996).  "Where state law remedies exist, a plaintiff must either avail herself of the remedies guaranteed by state law or demonstrate that the available remedies are inadequate." *Doherty*, 75 F.3d at 323; *see also Strasburger*, 143 F.3d at 358 ("State law remedies in theory can satisfy due process as well as federal ones, so we require plaintiffs seeking federal remedies to show the state's remedies lacking.").

Upon review of the Callons' amended complaint as well as their response brief to the motion at issue, the Callons have not adequately alleged or shown that Indiana's state law remedies are lacking.   In addition, the Town officials subsequently issued a satisfaction of judgment and released the Callons' bond money.  If the Callons wanted to recover any portion of the bond money not initially received by them, they could have availed themselves of a state law remedy, such as an action for replevin to recover any money owed to them.  Ind. Code § 32-35-2-1.   Therefore, the Callons have failed to set forth a procedural due process violation that calls

for a federal remedy. *See Stachowski v. Town of Cicero*, 425 F.3d 1075, 1078 (7th Cir. 2005) (finding that the plaintiff's failure to pursue adequate state law remedies available to him necessarily eliminates his procedural due process claim). Accordingly, the Callons have failed to set forth a valid procedural due process claim.

### b.    Substantive Due Process Claims

First, the Callons assert substantive due process claim against the Defendants based on their claim of false arrest. However, this claim is without merit in light of the Seventh Circuit's ruling in *Patton v. Przybylski*, 822 F.2d 697 (7th Cir. 1987) and subsequent cases. In *Patton*, the Seventh Circuit recognized that "[i]f…an arrest is upheld when reviewed under the detailed rules that the courts have developed for determining the lawfulness of an arrest under the Fourth Amendment, the arrested person will not succeed in challenging the lawfulness of the arrest…by recasting his challenge in the language of due process rather than search and seizure." *Id.* at 699 (quoting *McKinney v. George*, 726 F.2d 1183, 1187 (7th Cir. 1984)) (internal quotations omitted). To the extent that the Callons assert a substantive due process claim on the basis of their false arrest claim, their claim fails as a matter of law on the merits. *See e.g.*, *Albright*, 510 U.S. at 273-74 (recognizing that petitioner's malicious prosecution claim must be judged under the Fourth Amendment, instead of asserting relief under a substantive due process analysis); *Jewett v. Anders*, 521 F.3d 818, 827 n.9 (7th Cir. 2008) ("The Supreme Court has cautioned that a substantive due process claim may not be maintained where a specific constitutional provision protects the right of allegedly violated—in this case, the Fourth Amendment."); *Gray v. City of Chi.*, 159 F. Supp. 2d 1086, 1090 (N.D. Ill. 2001) (determining that the plaintiff's due process claim is not viable when there is no substantive right under the Due Process Clause of the Fourteenth Amendment to be free from arrest except upon probable cause) (citing cases).

Because the Callons' false arrest claim is covered by the Fourth Amendment, they cannot also seek relief under the Fourteenth Amendment.

Next, the Callons allege that the Defendants' practices of reimbursing a tenant's landlord before obtaining a judgment collection from an individual resulting in the imposition of a body attachment is a violation of substantive due process because the practice "shocks the conscience." Stated differently, the Callons argue that Town officials should have known that it is clearly established that the use of body attachments as an enforcement mechanism in making tenants pay their delinquent utility bills is a due process violation. The Court agrees.

The Due Process Clause of the Fourteenth Amendment serves as "protection [for an] individual against arbitrary action of government." *County of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998). In reviewing government action, "only the most egregious conduct can be said to be 'arbitrary in the constitutional sense'," thus amounting to a constitutional violation. *Id.* at 846 (quoting *Collins v. Harker Heights*, 503 U.S. 115, 129 (1992). Substantive due process cases involving alleged official misconduct are analyzed under the "shocks the conscience" standard. *Palka v. Shelton*, 623 F.3d 447, 453-54 (7th Cir. 2010) ("The Due Process Clause protects citizens from abuses of power by executive officials…but official misconduct will rise to the level of a constitutional violation only if it shocks the conscience."). Under this principle, courts have found government officials' actions to be "conscience-shocking" when they "evince[] a deliberate indifference to the right of the individual" after having time for reasoned deliberation in their decisions. *King ex rel. King v. East St. Louis Sch. Dist. 189*, 496 F.3d 812, 819 (7th Cir. 2007); *see e.g.*, *County of Sacramento*, 523 U.S. at 851; *Armstrong v. Squadrito*, 152 F.3d 564, 576-77 (7th Cir. 1998). For deliberate indifference to "amount to criminal recklessness—the defendant must have known that the plaintiff 'was at serious risk of being

harmed, [and] decided not to do anything to prevent that harm from occurring even though he could easily have done so.'"  *Armstrong*, 152 F.3d at 577 (quoting *West v. Waymire*, 114 F.3d 646, 651 (7th Cir. 1997)).

The Court finds *Armstrong* to be instructive on this issue.  In *Armstrong*, a county sheriff seized the plaintiff pursuant to a civil body attachment warrant for failure to appear at a child support enforcement hearing. The plaintiff was held in jail for 57 days, even though the warrant only authorized a brief detention before the plaintiff would appear before a local court.  *Id.* at 568.  The plaintiff's increased incarceration was due to a processing error related to his case number and because of this error the court did not know the plaintiff was currently incarcerated. *Id.* at 568.  Throughout his confinement, the plaintiff continually demanded to be released for his court date and filled out written inmate requests forms, which the guards refused to accept.  *Id.* The guards purposefully ignored the plaintiff's pleas and instead relied upon the incorrect information in their computer system that was based upon the processing error.  *Id.* The Seventh Circuit in holding that the defendants violated the plaintiff's substantive due process rights, given the draconian length of his incarceration, concluded that the defendants acted with deliberate indifference. *Id.* The court reasoned that the application of the deliberate indifference standard was appropriate when the sheriff and jail officers had adequate time to deliberate and make unhurried judgments about the plaintiff's complaints.  *Id.* at 576-77; *see also County of Sacramento*, 523 U.S. at 853 ("[L]iability for deliberate indifference to inmate welfare rests upon the luxury enjoyed by prison officials of having time to make unhurried judgments, upon the chance for repeated reflection, largely uncomplicated by the pulls of competing obligations.").

The reasoning of *Armstrong* applies squarely to this case.  Here, Shannon testified that she went to the utility office before 4:30 p.m. on February 27, 2009 and showed Kehl her

handwritten receipt from the county clerk's office.  As discussed earlier, the county clerk's office and the court were open until 4:30 p.m. on that day.  Viewing the facts in the light most favorable to the Callons, as the Court is required to do at this stage, it is evident that Kehl and Cox both became aware that the Callons had paid the full judgment, due to the existence of Shannon's receipt, before the court closed for the day.  However, when confronted with this proof of payment as well as the knowledge that body attachments were issued against the Callons based on incorrect information, Cox and Kehl did nothing.  Instead of quickly faxing a request to the court to recall the body attachments, a practice Cox has done in the past, she informed Kehl she could do nothing until she returned from her medical leave the following week.

Unlike in cases such as *County of Sacramento*, involving a high speed police chase, where officers made rapid, spur-of-the-moment decisions, Cox and Kehl had time to make a deliberate decision on whether to act after learning about the Callons' receipt.  But instead of acting, both individuals did nothing to prevent the Callons' arrests even though they knew the Callons had already paid their full judgment.  Furthermore, the Callons had paid the utility bill and court costs in full on October 31, 2008.  Cox and Kehl could have prevented the issuance of a body attachment by calling the county clerk's office anytime before the February 20, 2009 hearing, but both failed to do this simple task.  "When such extended opportunities to do better are teamed with protracted failure to even care, indifference is truly shocking." *County of Sacramento*, 523 U.S. at 853; *see also Sellers v. Henman*, 41 F.3d 1100, 1102-03 (7th Cir. 1991) ("The only significance of multiple acts of negligence is that they may be evidence of the magnitude of the risk created by the defendants' conduct and the knowledge of the risk by the defendants.").  Thus, the Court concludes that Cox's and Kehl's knowledge of the Callons'

receipt along with their familiarity with body attachments provide an inference that they knew the Callons were at a serious risk of being harmed.   Accordingly, a reasonable jury could conclude that Cox's and Kehl's failure to contact the county clerk's office coupled with their deliberate choice not to take action to recall the body attachments after becoming aware of the Callons' payment was a conscious disregard of a serious risk.   Therefore, the Callons have established a genuine issue of material fact on their substantive due process claim that precludes the granting of summary judgment with respect to that claim.

Having found that an issue of material fact remains as to whether the Defendants' conduct violates substantive due process, one issue remains: namely, whether Cox and Kehl are entitled to qualified immunity.   Individual defendants may receive qualified immunity if their conduct does not violate a clearly established right.   *Armstrong*, 152 F.3d at 852 (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982).   The Defendants argue that there is no controlling precedent or trend in the case law, which would have informed Cox or Kehl that their failure to inform the court of information garnered after the issuance of a body attachment was a constitutional violation.   Contrary to the Defendants' assertions, however, Cox and Kehl had assumed a duty to protect the Callons when they affirmatively placed them in a position of danger they would not have otherwise faced.   *See Monfils v. Taylor*, 165 F.3d 511, 516 (7th Cir. 1998) (articulating the state-created danger exception; "liability exists when the state 'affirmatively places a particular individual in a position of danger the individual would not otherwise had faced'") (quoting *Reed v. Gardner*, 986 F.2d 1122, 1125 (7th Cir. 1993); *Estate of Stevens v. City of Green Bay*, 105 F.3d 1169, 1176 (7th Cir. 1997) (recognizing that "where the state creates a dangerous situation or renders citizens more vulnerable to danger" it implicates the protections of the Due Process Clause); *see also Paine v. Johnson*, 2008 WL 4890269, at *

14 (N.D. Ill. Nov. 7, 2008) (finding that an officer was not entitled to qualified immunity when she released an individual with a mental disorder from police custody into a high crime area, who was later found sexually assaulted and seriously injured).  Here, clearly established law indicated that Cox and Kehl had a duty to act and inform the court or the local authorities about recalling the body attachments when they learned that their actions placed the Callons in the dangerous position of losing their liberty, by way of arrest.  Therefore, Cox and Kehl are not entitled to qualified immunity.  Accordingly, the Court **GRANTS** Defendants' summary judgment motion with respect to the Callons' procedural due process claims, but **DENIES** Defendants' summary judgment motion with respect to the Callons' substantive due process claim.

**B.**     ***Monell* Claim**

The Callons also have asserted claims against the Town under *Monell v. Department of Soc. Servs.*, 436 U.S. 658 (1978).  Specifically, the Callons allege that the Town's practice, policy, and custom of seeking body attachments against customers with unpaid utility bills were the moving force of a constitutional violation.  Pursuant to *Monell*, a plaintiff may maintain a § 1983 claim against a municipality by establishing a policy or custom attributable to a municipal policymaker who was the "moving force" behind the constitutional deprivation.  *Id.* at 694-95. To accomplish this, the Callons must show that their constitutional rights were deprived by 1) an express policy, 2) a widespread practice that is well-settled enough to amount to a custom or usage with the force of law, or 3) an act by an individual with final decision policymaking authority that caused their injury.  *Grieveson v. Anderson*, 538 F.3d 763, 773 (7th Cir. 2008).

The Callons do not argue that there was an express policy of the Town to seek body attachments against utility customers to force them to pay their bills.  Nor have the Callons

alleged that the Town had established a widespread practice which was well settled as to constitute a custom or usage. Thus, the Callons contend that because Cox was in charge of filing suits against utility customers and effectively led the collection process, she was the final decision maker and *Monell* liability should apply. However, beyond just having discretion to exercise a particular function, for an official to be liable under *Monell* she must be responsible for establishing final government policy on an issue. *See Valentino v. Village of South Chi. Heights*, 575 F.3d 664, 675 (7th Cir. 2009). The determination of whether an individual has policymaking authority is a question of state law, and is to be decided by the court. *Id.* at 676. In determining whether an individual is a final decision maker on a particular issue, the courts look to three factors: (1) lack of constraints by polices made by others; (2) lack of meaningful review; and (3) a grant of authority to make the policy decision. *Wragg v. Village of Thornton*, 604 F.3d 464, 468 (7th Cir. 2010).

The Defendants argue that the town council is the final policymaking authority for the Town. *See* Ind. Code. § 36-5-2-2. The Court disagrees. The Defendants do not point to any laws, statutes, or ordinances which place policy setting authority in the hands of the town council as it relates to Cox's collection methods and the use of body attachments. To the contrary, all the evidence suggests that Cox has unfettered discretion to either proceed to file suits and request body attachments in a given case or make payment schedules with customers outside of court proceedings. In addition, there is no evidence to suggest that the town council provides meaningful oversight of Cox's decision making process. Instead, the evidence suggests that Cox, personally, or by her own delegation (in this case Kehl), makes the final decision as to how to collect unpaid utility bills for the Town as well as the final decision involving requests for body attachments. *See Valentino*, 575 F.3d at 677-78 (after applying the relevant factors, the

court found that a mayor was the final decision maker when he had unfettered discretion to hire and fire anyone he pleased).  After applying the relevant factors, it is apparent that Cox is the final decision maker for the Town with regards to the collection of utility bills.  Thus, the Callons have established that Cox is a final decision maker for the Town, such that the Town may be held liable if the jury finds that Cox, personally, or by her own delegation, violated the Callons' substantive due process rights under the Fourteenth Amendment.

## C.     State Law Claim

Finally, the Callons argue that the Town is liable for the state law claim of false imprisonment.  However, the Callons' state law claim is without merit because the Town is immune from liability pursuant to Indiana Code § 34-13-3-3(6).  Under Indiana Code § 34-13-3-3(6), a governmental entity is not liable if a loss results from the initiation of a judicial or an administrative proceeding.  Ind. Code § 34-13-3-3(6).  Here, the false imprisonment claim stems from the Town's initiation of proceedings supplemental hearing on February 20, 2009 due to Town officials' failure to file a timely satisfaction of judgment to cancel such a proceeding. Essentially, the Callons attempt to allege that the Town is liable for false imprisonment for failing to take steps to ensure that the proceedings supplemental hearing was discontinued. However, pursuant to the Indiana Code, the Callons may not recover from the Town for the initiation of its proceedings supplemental hearing.  *See Edwards v. Vermillion County Hospital*, 579 N.E.2d 1347, 1348 (Ind. Ct. App. 1991) (finding that a hospital was immune from liability under the Indiana Code for failing to discontinue a proceedings supplemental hearing against a plaintiff in a false imprisonment action).  Therefore, the Defendants are entitled to summary judgment on the Callons' state law claim.

## IV. <u>CONCLUSION</u>

For the reasons set forth above, Defendants' Motion for Summary Judgment (Dkt. 66) is **GRANTED** in part with respect to the Plaintiffs' Fourth Amendment claims, their procedural due process claims, and the state law claim of false imprisonment, but **DENIED** in part with respect to the Plaintiffs' substantive due process claim and *Monell* claim.

SO ORDERED:  1/25/2012

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Rosemary L. Borek
STEPHENSON MOROW & SEMLER
rborek@stephlaw.com

James S. Stephenson
STEPHENSON MOROW & SEMLER
jstephenson@stephlaw.com

John Terrill Young
YOUNG & YOUNG
hoosierjohn1@yahoo.com

Roger A. Young
YOUNG & YOUNG
youngandyoung@netzero.net